SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Scott M. Cain** (A-8-14) (074124)
**[NOTE: This is a companion case to State v. Yasin Simms (A-14-14)(074209), also filed today.]**

**Argued October 26, 2015 – Decided March 15, 2016**

**ALBIN, J., writing for a unanimous Court.**

In this appeal arising from a prosecution for offenses including possession with intent to distribute heroin and cocaine, the Court revisits the decision in State v. Odom, 116 N.J. 65 (1989), which held that an expert witness in a drug-distribution case could testify to the ultimate issue of fact, and therefore opine whether a defendant possessed drugs with the intent to distribute. The Court now determines that such ultimate-issue expert testimony is not appropriate in a drug-distribution case.

On July 16, 2008, detectives from the Hackensack Police Department were conducting a surveillance of the house where defendant Scott M. Cain lived with his mother. The officers observed a hand-to-hand exchange between defendant and an individual on the porch. The officers, who were in an unmarked vehicle, followed the individual. When the individual noticed that he was being followed, he dropped an object on the ground; the officers retrieved the dropped item, which was crack cocaine. On July 28, 2008, an officer observed a hand-to-hand transaction between defendant and another individual in front of defendant's house. Through further investigation, the officers recovered two glassine envelopes containing heroin. Both individuals testified that they purchased the drugs from defendant. The officers executed a search warrant at defendant's house and seized quantities of crack cocaine, powdered cocaine, and heroin, as well as a digital scale and Ziploc baggies.

At trial, a detective from the Bergen County Prosecutor's Office was qualified as an expert witness in the area of drug use and drug distribution. The prosecutor posed a hypothetical question to the detective, which mirrored nearly all of the evidence against defendant that the State presented at trial, and then asked whether the witness had an opinion as to whether defendant possessed the narcotics for personal use or with the intent to sell. The detective responded that, in his opinion, the drugs were possessed with the intent to distribute. He also testified about the value and packaging of the drugs, their location, and other indicia of drug distribution. The jury found defendant guilty of the drug offenses, including possession with intent to distribute cocaine and heroin. The trial court granted the State's application for an extended-term sentence, and sentenced defendant to a sixteen-year term of imprisonment with an eight-year period of parole ineligibility for second-degree possession of cocaine with intent to distribute.

Defendant appealed. In an unpublished opinion, the Appellate Division affirmed defendant's convictions, but reversed the sentence and remanded for a new sentencing hearing. The panel found that the trial court did not commit plain error by allowing the use of a hypothetical question to the expert witness. The panel held that the expert did not improperly express an opinion regarding defendant's guilt, but merely characterized defendant's conduct based on the record, and therefore did not intrude into the jury's exclusive province as trier of fact. The panel also rejected defendant's argument that the prosecutor's repetitive references to the search warrant constituted plain error. This Court granted defendant's petition for certification. 219 N.J. 631 (2014).

**HELD:** The testimony of the law-enforcement drug expert expressing an opinion on defendant's state of mind, more particularly, whether he intended to distribute drugs, exceeded appropriate bounds and encroached on the jury's exclusive domain as finder of fact. In future drug cases, an expert witness may not opine on the defendant's state of mind. Whether a defendant possessed a controlled dangerous substance with the intent to distribute is an ultimate issue of fact to be decided by the jury. Defendant's conviction is reversed and the matter is remanded for a new trial.

1. Under N.J.R.E. 702, expert testimony is permissible if scientific, technical or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a contested fact. Expert testimony, otherwise admissible, is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. An expert's opinion is not admissible unless the testimony concerns a subject matter beyond the ken of an average juror. Expert testimony is permissible only if it will assist the trier of fact to understand the evidence or to determine a fact in issue, and may be excluded if its probative value is substantially outweighed by the risk of undue prejudice. (pp. 12-13)

2. The seminal case on the scope of expert testimony in drug-distribution cases is State v. Odom, which upheld defendant's conviction for possession of cocaine with the intent to distribute based, in part, on a police detective's expert testimony that the defendant possessed crack cocaine with the intent to distribute. However, Odom stated seemingly irreconcilable principles by permitting expert testimony regarding defendant's culpable state of mind -- whether a defendant possessed drugs with the intent to distribute -- while also stating that testimony from the same expert which expresses a direct opinion on defendant's guilt on the crime charged is improper. In subsequent decisions applying Odom, the Court has attempted to curtail the misuse of expert testimony that has intruded into the jury's exclusive role as ultimate fact-finder, and reiterate that an expert's testimony may not recite the legal conclusion sought in a verdict. (pp. 1-2, 13-20)

3. Expert testimony can assist jurors to understand matters such as the indicia of a drug distribution operation, how drug traffickers package and process drugs for distribution, the function of drug paraphernalia, and the roles played by individuals in street-level drug transactions. An expert should not express an opinion on matters that fall within the ken of the average juror or offer an opinion about the defendant's guilt, and should not be used to bolster a fact witness's testimony about straightforward but disputed facts. Once the jury is informed about the peculiar characteristics of a drug-distribution scheme, the jurors are well-equipped to make the final determination of whether a defendant had the requisite mental state to commit a drug offense; that decision does not require special expertise. (pp. 2, 20-21)

4. Despite Odom's cautionary words, a hypothetical question that elicits a response from the expert opining that the defendant possessed drugs with the intent to distribute not only improperly mimics the statutory language, but also implicitly expresses the expert's opinion that the defendant is guilty. In drug cases, such ultimate-issue testimony may be viewed as an expert's quasi-pronouncement of guilt that intrudes on the exclusive domain of the jury, and may impermissibly bolster the testimony of fact witnesses. The Court concludes that an expert is no better qualified than a juror to determine the defendant's state of mind. (pp. 22-23)

5. The Court also concludes that hypothetical questions should be used in drug cases only when necessary. When the evidence is straightforward and the facts are undisputed, there is no need to resort to a hypothetical. However, if disputed facts are part of a question, the expert necessarily will be asked to assume the truth of certain facts through a hypothetical question. The hypothetical question asked of the law-enforcement drug expert was an improper attempt to elicit an affirmation of defendant's guilt by an expert, unfairly bolstered the prosecution's case, and intruded into the exclusive domain of the jury by providing an opinion on the ultimate issue of fact. The probative value of the detective's testimony on this point was substantially outweighed by its prejudicial impact. The taint of the hypothetical and the response had the capacity to infect all of the charges, and was clearly capable of producing an unjust result. (pp. 26-31)

6. The repeated references by the prosecutor to the search warrant for defendant's home issued by the court went well beyond what was necessary to inform the jury that the officers were acting with lawful authority. These repeated references had little probative value, but had the capacity to lead the jury to draw an impermissible inference that the court issuing the warrant found the State's evidence credible. However, in light of the ruling reversing the conviction based on the opinion testimony by the drug expert, the Court does not determine whether these comments constitute plain error. (pp. 31-35)

The judgment of the Appellate Division is **REVERSED,** defendant's drug convictions are **VACATED,** and the matter is **REMANDED** to the trial court for further proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON, and**

**JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion. JUSTICE FERNANDEZ-VINA did not participate.**

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

        v.

SCOTT M. CAIN,

    Defendant-Appellant.


        Argued October 26, 2015 – Decided March 15, 2016

        On certification to the Superior Court,
        Appellate Division.

        Brian F. Plunkett, Assistant Deputy Public
        Defender, argued the cause for appellant
        (Joseph E. Krakora, Public Defender,
        attorney).

        Elizabeth R. Rebein, Assistant Prosecutor,
        argued the cause for respondent (John L.
        Molinelli, Bergen County Prosecutor,
        attorney).

        Steven A. Yomtov, Deputy Attorney General,
        argued the cause for amicus curiae Attorney
        General of New Jersey (John J. Hoffman,
        Acting Attorney General, attorney).


    JUSTICE ALBIN delivered the opinion of the Court.

    In State v. Odom, 116 N.J. 65, 80-81 (1989), we held that

an expert witness in a drug-distribution case could testify to

the ultimate issue of fact -- whether a defendant possessed

drugs with the intent to distribute.  We cautioned, however,

that the expert's testimony should not amount to a pronouncement of guilt.  Allowing an expert to offer an opinion on a defendant's guilty state of mind in a drug case while prohibiting the same expert from offering an opinion on defendant's guilt are not easily reconcilable principles.  In a series of cases since Odom, we have attempted to curtail the misuse of expert testimony that has intruded into the jury's exclusive role as finder of fact.  Odom's approval of expert testimony on the state of mind of a defendant in drug cases also has spawned lengthy and intricate hypothetical questions that have the appearance of a prosecutorial summation.  We therefore must revisit whether such ultimate-issue expert testimony is appropriate in a drug-distribution case.

Expert testimony in many drug-distribution cases provides necessary insight into matters that are not commonly understood by the average juror, such as the significance of drug packaging and weight, scales and cutting agents, stash sites, the role of confederates, and other activities consistent with drug trafficking.  However, once the jury is informed about the peculiar characteristics of a drug-distribution scheme, the average juror is well-equipped to make the final determination whether a defendant possessed the requisite mental state to commit a drug offense.  That determination does not require special expertise; it requires the sound judgment of jurors, who

rely on their life experiences, common sense, and collective reasoning in rendering a verdict.

In the case before us, the prosecutor posed a hypothetical question to a law-enforcement drug expert. The question extended onto three trial transcript pages and elicited the expert's opinion that defendant intended to distribute drugs. Defendant was found guilty of committing a number of drug offenses. The Appellate Division affirmed those convictions.

We reverse and hold that the expert's testimony -- following the lengthy and intricate hypothetical question -- exceeded appropriate bounds and encroached on the jury's exclusive domain as finder of fact. The hypothetical not only resembled a mid-trial summation encapsulating every minor detail of the case, but also permitted the expert to opine on defendant's state of mind -- whether he intended to distribute drugs. Expert testimony opining on that ultimate issue of fact was not necessary to assist the jury. The jurors were perfectly capable of deciding that issue on their own.

We conclude that the use of the expert testimony in this case had the clear capacity to cause an unjust result. We also note that any probative value to the prosecutor's repetitive references to a judge-issued search warrant for defendant's home was outweighed by its prejudicial impact. We therefore vacate defendant's drug convictions and remand for a new trial.

3

I.

Defendant Scott M. Cain was charged in a seven-count Bergen County indictment with third-degree distribution of cocaine, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree distribution of heroin, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); first-degree maintenance of a facility for the manufacture of controlled dangerous substances, N.J.S.A. 2C:35-4; second-degree possession of cocaine with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of heroin with the intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(3); third-degree possession of cocaine, N.J.S.A. 2C:35-10(a)(1); and third-degree possession of heroin, N.J.S.A. 2C:35-10(a)(1).  The charges arose from defendant's alleged involvement in two separate drug sales and the storing of drugs in the house where he resided.

During a four-day jury trial, the State elicited the following evidence in support of its case.

On July 16, 2008, Detective Demetrius Carroll and Officer James Smith of the Hackensack Police Department were conducting a surveillance of 369 DeWolf Place in Hackensack, a house where defendant lived with his mother.  That day, the officers observed a hand-to-hand exchange between defendant and Donald Hinson on the porch of the house.  The officers followed Hinson in an unmarked vehicle.  When Hinson noticed that he was being

4

followed, he dropped an object on the ground. The officers stopped and arrested Hinson, and recovered the dropped item -- .20 grams of crack cocaine. Hinson testified at trial that defendant sold him the drugs.

On July 28, 2008, while conducting surveillance of defendant's residence, Officer Smith observed defendant and Jeffrey Beckham engage in a hand-to-hand transaction in front of the house. Officer Smith and a fellow officer later stopped Beckham to conduct a "field investigation." The officers first questioned Beckham and then seized a cigarette box and plastic bag that he was holding. The officers discovered two glassine envelopes containing .02 grams of heroin. Beckham was arrested, and later testified at trial that he purchased the drugs from defendant.

On August 6, 2008, officers of the Hackensack Police Department executed a warrant to search 369 DeWolf Place. Present in the house at the time were defendant's mother, defendant's girlfriend, and the girlfriend's young son. During the search, the police seized: (1) 3 grams of crack cocaine from defendant's bedroom dresser drawer; (2) a bag of approximately 15 grams of powdered cocaine, 100 purple Ziploc baggies, and a digital scale from defendant's bedroom closet; and (3) 10 glassine envelopes with a red logo containing heroin from a china hutch in the foyer.

5

At trial, Detective Brett Rothenberger of the Bergen County Prosecutor's Office was qualified as an expert witness in the area of drug use and drug distribution. The prosecutor posed a hypothetical question, covering three transcript pages, mirroring nearly all of the evidence presented by the State against defendant, including defendant's alleged drug transactions with Hinson and Beckham. The following question was tacked on to the end of the lengthy "hypothetical" facts: "[D]o you have an opinion as to whether those narcotics were possessed for personal use or possessed with the idea to sell?" Detective Rothenberger responded that, in his opinion, the drugs were possessed with the intent to distribute. The form of the hypothetical question left no doubt that the subject was defendant. In addition to opining about defendant's state of mind, Detective Rothenberger testified about the value and packaging of the drugs, the location of the drugs, and other indicia consistent with drug distribution.

Throughout the course of the trial, the prosecutor repeatedly referenced that the search of defendant's residence was authorized by a warrant issued by the court. In his opening statement, the prosecutor told the jury that "[a] search warrant was then obtained, authorized by a Superior Court judge." The prosecutor returned to that theme, stating that information about the drug transactions with Hinson and Beckham was included

6

in "an affidavit for a search warrant" and that "[a] search warrant [was] brought to a judge" because "[b]efore you can go into somebody's home under those circumstances, you need the authority of a Superior Court judge." In the course of questioning witnesses, the prosecutor repeatedly elicited that a warrant was secured to search defendant's residence and occasionally elicited that a Superior Court judge issued the warrant.

The jury found defendant guilty on all counts except the charge of maintaining a facility for the manufacture of controlled dangerous substances. The trial court granted the State's application for an extended-term sentence and imposed a sixteen-year term of imprisonment with an eight-year period of parole ineligibility for second-degree possession of cocaine with the intent to distribute. The court imposed concurrent prison terms for three other convictions: four years for third-degree distribution of cocaine, four years for third-degree distribution of heroin, and four years for third-degree possession of heroin with the intent to distribute. The remaining charges were merged into the second-degree intent-to-distribute conviction. Last, the court ordered that defendant pay all applicable penalties and fines.

Defendant appealed.

## II.

In an unpublished opinion, the Appellate Division affirmed defendant's convictions, but reversed the sentence because the record did not support the trial court's finding of aggravating factor number two, N.J.S.A. 2C:44-1(a)(2) (considering "gravity and seriousness of harm inflicted on the victim"). The panel remanded for a new sentencing hearing.

The panel found that the trial court did not commit plain error by allowing the use of a hypothetical question. According to the panel, the expert did not express an opinion regarding defendant's guilt, but merely characterized defendant's conduct based on the record, and therefore did not intrude into the jury's exclusive province as trier of fact.

The panel also rejected defendant's argument that the prosecutor's repetitive references to the search warrant constituted plain error. The panel believed that references to the warrant explained that the police were authorized to search defendant's home and did not suggest that the judge who issued the warrant acted on evidence not introduced at trial.

We granted defendant's petition for certification. State v. Cain, 219 N.J. 631 (2014). In addition, we requested that the parties "file supplemental briefs addressing the rationale and need for hypothetical questions in the trial of a drug case, and the circumstances under which such questions may be used." We also granted the Attorney General leave to participate as

8

amicus curiae.

III.

A.

Defendant argues that because the hypothetical packed all of the prosecutor's evidence into a single question, the expert was allowed to give his "stamp of approval" to the State's case and to express a belief, inferentially, that defendant was guilty of the crime. Defendant contends that because the hypothetical included the assumption that defendant had sold drugs to two buyers, the question began with the premise that defendant was a drug dealer. He asserts that the expert's testimony should have been limited to assisting the jury's understanding of "the unfamiliar practices of the drug trade," such as "the significance of packaging, quantities, values, the properties of illegal drugs, the presence or lack of use paraphernalia," and other indicia of drug trafficking. He also asserts that the propriety of hypothetical questions "should be resolved at a pre-trial hearing" and that expert testimony whose prejudice exceeds its probative value should be excluded under N.J.R.E. 403.

Additionally, defendant submits that the prosecutor's repeated and gratuitous references to the police possessing a "court authorized warrant" to search defendant's residence "communicated to the jury that a 'Superior Court Judge' 'in [the

9

same] building' had already heard the same evidence" and determined that the State's evidence "was credible and reliable." Defendant concludes that he was denied a fair trial because he "had a right to have the jurors decide his guilt or innocence untainted by the knowledge that a judge thought that the evidence was sufficient to justify a search of [his residence]."

B.

The State urges that we uphold defendant's convictions and reaffirm our rulings in Odom and successor cases that "hypothetical questions are an appropriate tool . . . when presenting the testimony of a drug distribution expert in cases where a defendant's mental state is at issue." The State contends that the hypothetical in this case conformed to case law because "it focused on the issue of the intent to distribute," "did not ask the expert to opine [on] who possessed the CDS," and "appropriately factored into the hypothetical that two prior distributions occurred." Additionally, the State argues that holding a pre-trial hearing to determine the propriety of a hypothetical question is not practicable because the facts to be incorporated into the question depend on trial testimony. The State suggests that counsel should object "to the hypothetical question when it is posed."

The State submits that references to the search warrant

during trial were necessary to explain that the police had legal authority to enter defendant's home. The State claims that testimony about the warrant did not imply "that a judge had already determined guilt" and that "any fleeting references" to the search warrant did not have the capacity to deny defendant a fair trial.

C.

The Attorney General, appearing as amicus curiae, submits that expert testimony elicited by properly posed "hypotheticals still play[s] an important role in drug prosecutions." The Attorney General notes that, since Odom, "well-established principles have emerged governing the use of hypotheticals" and that, in more recent cases, "explicit limitations and restrictions have been placed to curb potential abuse." The Attorney General states that hypotheticals remain "a critical tool for the jury in understanding the evidence at trial" and that "[n]o special justification has been presented to eliminate" their use in drug cases. The Attorney General is confident that "any problems that have arisen in the past concerning this area of our jurisprudence will be remedied" by the recent guidance given by this Court.

IV.

A.

Defendant was charged with possession with intent to

distribute the drugs seized from his home.  Whether defendant had the requisite state of mind to commit the offense -- the intent to distribute -- was an ultimate issue of fact to be decided by the jury.

The parties do not dispute that expert testimony is necessary to assist the jury in understanding the significance of packaging, weight, and concentration of drugs; drug paraphernalia; the manner in which drugs are concealed; and the peculiar characteristics of a drug-trafficking operation.  The issue is whether, after the jury is informed about the esoteric features of a drug-distribution scheme, the jury needs the expert's assistance in determining the defendant's state of mind or whether the jurors are capable of rendering a decision on that ultimate issue of fact by using their common sense and experience to draw rational inferences from the evidence.

The beginning point of our inquiry must be our rules of evidence.  Under N.J.R.E. 702, expert testimony is permissible "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue."  (Emphasis added).  Expert testimony "otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  N.J.R.E. 704 (emphasis added).  Importantly, however, an expert's opinion is not admissible unless the "testimony concerns a subject

12

matter beyond the ken of an average juror." State v. Reeds, 197 N.J. 280, 290 (2009) (citing State v. Jenewicz, 193 N.J. 440, 454 (2008)). Expert testimony is not necessary to tell the jury the "obvious." State v. Nesbitt, 185 N.J. 504, 514 (2006). Thus, expert testimony on the ultimate issue of whether a defendant intended to distribute drugs is permissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue," N.J.R.E. 702, and "may be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice," N.J.R.E. 403; State v. Sowell, 213 N.J. 89, 100 (2013).

If the witness possesses the requisite criteria to qualify as an expert, he may testify "in the form of an opinion." N.J.R.E. 702. That opinion may be elicited by questions, which "need not be hypothetical in form unless in the judge's discretion it is so required." N.J.R.E. 705.

### B.

The seminal case on the scope of expert testimony in drug-distribution cases is State v. Odom, 116 N.J. 65 (1989). In Odom, this Court upheld the defendant's conviction of possession of cocaine with the intent to distribute based, in part, on a police detective's expert testimony that the defendant possessed eighteen vials of crack with the intent to distribute. Id. at 78-79. In doing so, the Court stated "that as long as the

expert does not express his opinion of defendant's guilt but simply characterizes defendant's conduct based on the facts in evidence in light of his specialized knowledge, the opinion is not objectionable even though it embraces ultimate issues that the jury must decide."  Id. at 79.

In reaching that conclusion, Odom set forth seemingly irreconcilable principles that have bedeviled both practitioners and courts.  It stated, on the one hand, that "an opinion [embracing ultimate issues] is permissible although it is expressed in terms that parallel the language of the statutory offense when that language also constitutes the ordinary parlance," id. at 79, and on the other hand, that "to the extent possible, the expert's answer should avoid the precise terminology of the statute defining the criminal offense and its necessary elements," id. at 82.  Although the Court in Odom concluded that the expert's opinion -- that the defendant possessed cocaine with intent to distribute (the elements necessary for conviction) -- was properly admitted, id. at 81, it also concluded "an expert's testimony that expresses a direct opinion that defendant is guilty of the crime charged is wholly improper," id. at 77.

The Odom Court also advised that the expert should be posed a hypothetical question, incorporating evidence adduced at trial, and that "the defendant's name should not be used."  Id.

14

at 82.  The Court maintained that an expert could explain to the jury the significance of the facts through carefully phrased hypothetical questions and then "the trial court should carefully instruct the jury on the weight to be accorded to and the assessment of expert opinion testimony."  Ibid.

State v. Summers, 176 N.J. 306, 312-17 (2003), involved the application of the principles of Odom.  In that case, after the police observed the defendant engage in a suspected drug sale with a buyer, both were taken into custody.  Id. at 309.  The police caught the buyer placing four baggies of cocaine in his mouth and recovered from the defendant a cigarette pack containing fifty small baggies of cocaine -- identical to those found on the buyer -- along with $262 and a pager.  Id. at 309-10.  At trial, the prosecutor asked a law enforcement drug expert a hypothetical question, which contained details about the surveillance and the items recovered from the suspects.  Id. at 310-11.  The hypothetical designated the buyer as S-1 and the defendant as S-2.  Id. at 311.  The prosecutor then asked the expert:  "Do you have an opinion as to whether S-2 in this hypothetical . . . possessed those drugs for his own use or for distribution?"  Ibid. (alteration in original).  The expert expressed the view that S-2 possessed the drugs for distribution.  Ibid.  The defendant was found guilty of multiple drug offenses, including possession, possession with the intent

15

to distribute, and distribution of a controlled dangerous substance.  Ibid.

In upholding the defendant's conviction, the Court indicated that although the expert testified that the defendant possessed the drugs with the intent to distribute, the expert did not cross the line by explicitly stating that "the defendant is guilty of the crime charged."  Id. at 314-15 (quoting Odom, supra, 116 N.J. at 80).

Summers simply followed the directives of Odom.  The prosecutor substituted a symbol, S-2, for the name of the defendant, as Odom proposed.  But the use of the symbol S-2 was clearly understood as referring to the defendant, otherwise the hypothetical would have been meaningless.  Moreover, Summers, like Odom, did not explain the distinction between a law enforcement drug expert opining that a defendant possessed the drugs with the intent to distribute and the expert opining that the defendant is guilty of the offense of possession of drugs with the intent to distribute.

After Summers, in a series of cases, this Court slowly retreated from some of the broader implications of Odom.  In State v. Nesbitt, 185 N.J. 504, 507-10, 518 (2006), the Court disapproved of a hypothetical question that led the police expert to answer that B (the hypothetical's substitute for the defendant's name) "was complicit in distributing drugs."  In

16

that case, at the direction of the defendant, an accomplice handed an undercover police officer crack cocaine in exchange for ten dollars.  Id. at 508.  The defendant was convicted of distribution of a controlled dangerous substance and related offenses.  Id. at 510.

Although we found that the admission of the expert testimony did not constitute plain error, we expressed concern that "Odom should not be misconstrued to signal our willingness to accept, carte blanche, the use of hypothetical questions asked of law enforcement experts in all drug charge settings." Id. at 514.  We maintained that "an expert is not needed to state that which is obvious," id. at 507, that "expert testimony must be about 'a subject matter that is beyond the ken of the average juror,'" id. at 514 (quoting State v. Kelly, 97 N.J. 178, 208 (1984)), and that "the wording of the expert's answer elicited by the hypothetical question did not adhere to our admonition in Odom and Summers to avoid use of precise terminology found in the statute," id. at 508.  We noted that "[e]xpert testimony that recites the legal conclusion sought in a verdict is not helpful to the jury," id. at 517 (citing United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002)), and reminded our courts that they "are expected to perform a gatekeeper role in determining whether there exists a reasonable need for an expert's testimony," id. at 514.

17

In State v. Reeds, 197 N.J. 280, 284-85 (2009), we reversed the defendant's conviction of possession of heroin with the intent to distribute and the lesser charge of possession because, in response to a hypothetical question, a police expert testified that the defendant and two other occupants of a car constructively possessed with the intent to distribute drugs found in the vehicle. We held that "the expert's constructive possession opinion was tantamount to a legal conclusion, resulting in a veritable pronouncement of guilt on the two possession crimes." Id. at 297. We noted, moreover, that "by mimicking the language of the statute . . . the expert's testimony on constructive possession of drugs" was neither probative nor helpful to the jury. Id. at 296-97. We stated that "Odom's continued application is not without boundaries" and again "cautioned that 'Odom does not license the use of a narcotics expert to tell a jury that which is obvious.'" Id. at 293 (quoting Nesbitt, supra, 185 N.J. at 514). We concluded that the expert's "ultimate-issue testimony usurped the jury's singular role in the determination of defendant's guilt and irredeemably tainted the remaining trial proofs." Id. at 300.

In State v. McLean, 205 N.J. 438, 443, 463 (2011), we reversed the defendant's possession-with-intent-to-distribute convictions because a police officer, based on his surveillance observations of the defendant handing an item to an individual

18

in exchange for money, gave opinion testimony that a narcotics transaction had occurred. We rejected the argument that the officer's testimony was permissible as either a lay or an expert opinion. Id. at 461-62. We made clear that "expert testimony [is] not admissible if the transactions at issue occurred in a straightforward manner," id. at 452 (citing Nesbitt, supra, 185 N.J. at 516), and that "experts may not, in the guise of offering opinions, usurp the jury's function by . . . opining about defendant's guilt or innocence," id. at 453. In short, we determined that expert testimony has no place when the jury is fully able to grasp the meaning of facts without assistance. Id. at 461.

More recently, in State v. Sowell, 213 N.J. 89, 93 (2013), we critiqued the improper use of expert testimony in a drug prosecution against the defendant, a prison inmate. In that case, the State presented evidence that during a prison visit, an individual passed to the defendant a bag of potato chips that was later found to contain a balloon filled with thirty "decks" of heroin. Id. at 94-95. The defendant contested that such an exchange occurred. Id. at 93. A Department of Corrections investigator, qualified as a drug expert, was given a hypothetical question tracking the State's evidence and responded "[t]hat an exchange of narcotics took place." Id. at 96.

19

We stated that "[i]t is not appropriate to summarize straightforward but disputed evidence in the form of a hypothetical and then elicit an expert opinion about what happened" because such an "approach improperly bolsters the State's proofs with expert testimony and can usurp the jury's sole responsibility to find the facts." Id. at 102. We also indicated that the expert's "testimony invaded the jury's role as the ultimate fact finder." Id. at 93. We refrained from reversing the defendant's convictions "only because of the overwhelming evidence of [his] guilt," id. at 107, but "urge[d] trial judges, in their role as gatekeepers, to be vigilant and bar this type of testimony," id. at 108.

C.

The value of expert testimony in drug cases, in general, is not at issue in this case. The average juror is not knowledgeable about the arcana of drug-distribution schemes. Law enforcement officers with extensive training, education, and experience of the drug world have "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue." N.J.R.E. 702. Experts can help jurors understand the indicia of a distribution operation, such as how drug traffickers package and process drugs for distribution. See Odom, supra, 116 N.J. at 73-75. Experts can shed light on the significance of the quantities and

20

concentrations of drugs, the value of drugs, the use of identifiable logos on drug packaging, and the function of drug paraphernalia, e.g., scales, baggies, and cutting agents. See ibid.; Sowell, supra, 213 N.J. at 100-05; United States v. Mejia, 448 F.3d 436, 441, 449 (D.C. Cir. 2006) (noting expert's testimony on significance of "drug logos associated with the packaging of cocaine"), cert. denied, 549 U.S. 1137, 127 S. Ct. 989, 166 L. Ed. 2d 747 (2007). Experts may also provide insight into the roles played by individuals in street-level drug transactions, see State v. Berry, 140 N.J. 280, 301-02 (1995), and into the various machinations used by drug dealers to thwart detection, see Nesbitt, supra, 185 N.J. at 515. There are undoubtedly other areas where a drug expert can offer needed assistance to a jury.

Equally clear is that an expert should not express an opinion on matters that fall within the ken of the average juror or offer an opinion about the defendant's guilt. Id. at 512-14. Nor should an expert be used to bolster a fact witness's "testimony about straightforward, but disputed, facts." McLean, supra, 205 N.J. at 455. The jury brings a breadth of collective experience, knowledge, and wisdom to the task. Expert testimony is not necessary to explain to jurors the obvious. It is not a substitute for jurors performing their traditional function of sorting through all of the evidence and using their common sense

21

to make simple logical deductions.

Despite Odom's cautionary words, posing a hypothetical to an expert that elicits an answer that the defendant possessed drugs with the intent to distribute not only mimics the statutory language, but also implicitly expresses the expert's opinion that the defendant is guilty. See Summers, supra, 176 N.J. at 323 (Albin, J., dissenting) ("An expert, who advises the jury that the defendant possessed drugs with intent to distribute, is, in essence, telling the jury that the State has proven all the elements of the crime[,] . . . [and] has announced his own verdict, whether or not he uses the word 'guilty.'").

Additionally, expert testimony coming from a law enforcement officer claiming to have superior knowledge and experience likely will have a profound influence on the deliberations of the jury. See United States v. Fosher, 590 F.2d 381, 383 (1st Cir. 1979); State v. Wheeler, 416 So. 2d 78, 82 (La. 1982).

As this case proves, despite our efforts in Nesbitt, Reeds, McLean, and Sowell to deter in the misuse of expert testimony, the problem persists. Candor requires that we admit that the root of the problem is contradictory language in Odom.

We have come to the conclusion that an expert is no better qualified than a juror to determine the defendant's state of

22

mind after the expert has given testimony on the peculiar characteristics of drug distribution that are beyond the juror's common understanding. In drug cases, such ultimate-issue testimony may be viewed as an expert's quasi-pronouncement of guilt that intrudes on the exclusive domain of the jury as factfinder and may result in impermissible bolstering of fact witnesses. The prejudice and potential confusion caused by such testimony substantially outweighs any probative value it may possess.

Federal Rule of Evidence 704(b), unlike its New Jersey counterpart, specifically prohibits an expert witness in a criminal case from stating "an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." That rule makes clear that "[t]hose matters are for the trier of fact alone." Id. Accordingly, federal courts in drug cases do not permit an expert witness to testify about a defendant's mental state. See id.; see, e.g., United States v. Watson, 260 F.3d 301, 310 (3d Cir. 2001) ("Of course, narcotics experts may testify about drug dealing, but they are in no way qualified to testify about a defendant's mental condition."); United States v. Boissoneault, 926 F.2d 230, 233 (2d Cir. 1991) ("Once [the expert witness] had testified as to the likely drug transaction-related significance of each piece of physical evidence, the

23

jury was competent to draw its own conclusion as to [defendant's] involvement in the distribution of cocaine.").

Indeed, other jurisdictions do not permit expert testimony on defendant's state of mind in drug cases. See, e.g., State v. Campbell, 626 A.2d 287, 291 (Conn. 1993) (holding that trial court erred in allowing expert testimony that "defendant possessed the drugs with the intent to sell or with intent to use them personally"); Fluellen v. State, 703 So. 2d 511, 513 (Fla. Dist. Ct. App. 1997) (finding that trial court erred by admitting officer's testimony "that the quantity of cocaine possessed by the [defendant] indicated that the [defendant] possessed the drug with the intent to sell, rather than for personal use. . . . because it exceeded the limitations of expert testimony"); State v. Shumpert, 554 N.W.2d 250, 254 (Iowa 1996) (finding that expert testimony admissible because expert "did not testify about whether [defendant] possessed the requisite intent to deliver," but rather "expressed his opinion that the manner of packaging was consistent with the manner of packaging associated with drug dealing"); People v. Williams, 638 N.Y.S.2d 705, 705 (App. Div.) (holding that expert's testimony that defendant possessed crack cocaine with "intent to sell the drugs . . . invad[ed] the exclusive province of the jury in determining an ultimate issue of fact"), appeal denied, 667 N.E.2d 352 (N.Y. 1996).

We now join those jurisdictions that limit the scope of expert testimony in drug cases.  Going forward, in drug cases, an expert witness may not opine on the defendant's state of mind.  Whether a defendant possessed a controlled dangerous substance with the <u>intent</u> to distribute is an ultimate issue of fact to be decided by the jury.

D.

We also believe that hypothetical questions should be used only when necessary in drug cases.  For instance, no one is fooled when a hypothetical tracks the evidence and substitutes the name of a defendant for a symbol, such as S-2.  <u>See</u> <u>Summers</u>, <u>supra</u>, 176 <u>N.J.</u> at 311.  The symbolic fig leaf serves no purpose.  If the jury could not deduce that S-2 is the defendant, the information conveyed through the expert would be meaningless.  When the evidence is straightforward and the facts are not in dispute, there is no need to resort to a hypothetical.  For example, an expert can explain the purpose of logos on drug packaging without having to respond to a hypothetical question.  <u>See</u> <u>State v. Simms</u>, __ <u>N.J.</u> __ (2016) (slip op. at 20).  Questions can incorporate the evidence of record, such as the quantity of drugs, packaging materials, scales, and money discovered, and the expert can render an opinion on their significance in a drug-distribution operation.

The use -- and abuse -- of hypothetical questions has been the subject of much criticism by legal scholars and courts. Some fault hypothetical questions because they are overly partisan, unnecessarily lengthy, often complex, and frequently awkward, Mason Ladd, Expert Testimony, 5 Van. L. Rev. 414, 427 (1951), and others because they allow an "attorney to make a closing argument mid-stream," The New Wigmore, § 3.4 at 94 (2004) (citing Charles McCormick, Handbook of the Law of Evidence § 16 at 33-34 (1954)). See also People v. Vang, 262 P.3d 581, 589 (Cal. 2011). Some have even called for the abolition of the hypothetical question. See The New Wigmore, supra, § 3.4 at 94 (citing 1 Wigmore on Evidence § 686 at 1094 (2d ed. 1923)); Ladd, supra, 5 Van. L. Rev. at 427. We see no reason to go that far here.

We cannot presume that hypothetical questions will not be useful in all circumstances merely because they are abused in some circumstances. Drug cases, like other cases, will involve disputed facts. If disputed facts are part of a question, the expert necessarily will be asked to assume the truth of certain facts, and therefore the question will be hypothetical in nature.

Additionally, our evidence rules contemplate that hypothetical questions may be necessary. N.J.R.E. 705 ("Questions calling for the opinion of an expert witness need

26

not be hypothetical in form unless in the judge's discretion it is so required.").  To the extent possible, questions posed to an expert witness in a drug case should be compact and easy to understand and should not take the form of a summation.  We do not suggest that the question cannot be of a compound nature because a variety of factors may collectively form the basis for an expert opinion, but simplicity in sentence structure will be helpful to the witness and the jury.  We do not offer a dogmatic approach.  In the end, we must rely on the sound discretion of our trial judges to follow the guidance given here.

We reject defendant's argument that hypothetical questions should be vetted pretrial.  The formulation of questions will depend on the development of the evidence at trial.  In some instances, it may be appropriate to conduct a hearing out of the presence of the jury pursuant to N.J.R.E. 104 to ensure the fairness and propriety of a hypothetical question.  Whether to employ such a procedure is left to the discretion of the trial court as gatekeepers of the evidence.

V.

The hypothetical question posed to drug expert Detective Rothenberger, reproduced in full in the appendix, spanned three pages of transcript and recited nearly every detail of the case. The hypothetical starts by asking the expert to assume that an "individual" -- clearly defendant -- sold drugs to two buyers

27

outside of his home.  The hypothetical then continues by recounting every detail concerning the search of defendant's house and calls for the expert to give an opinion whether the drugs recovered were possessed with the intent to distribute:

> [Prosecutor]:   [R]oughly a week and a half later or so, the search warrant authorized by the Court is acted upon the same residence . . . .
>
> Assume further that when the search warrant is acted upon the individual observed selling is outside the house. . . .  When [the police] enter the home located within the home . . . is first of all at a china hutch near that entrance is in a teacup, a small object, ten glassine envelopes . . . established to be heroin.
>
> Further assume that located in a bedroom upstairs there is found in a dresser a rock of crack cocaine, estimated weight slightly over 3 grams.  Assume further that in that same room in a closet within a box, and again within another container within that box is a bag of white powder cocaine.  Assume that the weight of that white powder is . . . slightly over 15 grams. . . .  [I]n that same box with that powder cocaine are 100 little baggies, purple in color.  Assume further that next to those items in that same container is a digital scale about the size of your hand.
>
> . . . [I]n that same room is a box of plastic sandwich bags, and assume, please if you would, that the two drug purchasers surveilling on those two previous occasions have also stated that they in fact made those drug purchases from the individual at that house. . . .
>
> Given those hypothetical facts, do you have an opinion as to whether . . . those narcotics were possessed for personal use or

28

> possessed with the idea to sell, and please give an opinion as to each narcotic.
>
> [Detective Rothenberger]: Well I do have an opinion . . . it's possession with intent to distribute.

First, the hypothetical is the classic mid-trial summation, allowing the prosecutor to package his entire case in a single question and elicit affirmation of defendant's guilt from an expert. Second, the literary device of assuming a hypothetical "individual" without identifying the defendant by name is a thinly veiled guise that serves no purpose and fails to dissipate any potential prejudice. Third, the hypothetical unfairly bolstered the prosecution's case by asking the law enforcement expert to assume that defendant was a drug dealer.

After the detective explained to the jury the significance of the items found in defendant's home -- the quantity and packaging of the drugs, the scale, and the role of cutting agents in a distribution scheme -- the jury had the tools to do its job. Surely, if the jury believed that defendant sold drugs on two prior occasions, it was capable of drawing the inference on its own, in conjunction with other evidence, that the drugs found in his home were possessed with the intent to distribute. The jury did not need the assistance of a law enforcement officer with drug expertise to figure out that a drug dealer might hide drugs in his home. The detective's opinion on the

29

ultimate issue of fact -- whether defendant had the requisite intent to distribute -- did not require expert assistance. The expert testimony intruded into the exclusive domain of the jury. The probative value of the detective's testimony on this point was substantially outweighed by its prejudicial impact. See N.J.R.E. 403.

Although clearly prejudicial, Detective Rothenberger's testimony did not draw an objection from defense counsel. Such a procedural default ordinarily would weigh heavily against defendant under the plain-error standard. R. 2:10-2 ("Any error or omission shall be disregarded by the appellate court unless it is of such a nature as to have been clearly capable of producing an unjust result . . . ."). The less-than-clear standard governing our jurisprudence on ultimate-issue testimony in drug cases, however, makes counsel's default somewhat understandable.

The inclusion of the "assumed" drug sales in the hypothetical had a potential domino effect. It unfairly bolstered the State's case on the charge of possession with intent to distribute. In turn, the buttressed possession-with-intent-to-distribute charge made more persuasive the State's version that defendant sold drugs outside his home, a point defendant vigorously contested. Accordingly, the taint of the hypothetical and the answer it elicited had the capacity to

30

infect all of the charges and were "clearly capable of producing an unjust result."  See R. 2:10-2.

VI.

A.

We next turn to whether the repeated references to a search warrant for defendant's house unfairly implied that the judge issuing the warrant credited the same evidence later presented at trial.

To be sure, the prosecutor has the right to convey to the jury that the police were authorized to search a home.  Every juror surely knows that the police typically cannot search a home without a warrant.  The jury should not be left guessing whether the police acted arbitrarily by entering a home without a search warrant.  See State v. Marshall, 148 N.J. 89, 240, cert. denied, 522 U.S. 850, 118 S. Ct. 140, 139 L. Ed. 2d 88 (1997) ("[T]he fact that a warrant was issued might necessarily be put before a jury in order to establish that the police acted properly.").

On the other hand, repeated statements that a judge issued a search warrant for a defendant's home -- when the lawfulness of the search is not at issue -- may lead the jury to draw the forbidden inference that the issuance of a warrant by a judge supports the rendering of a guilty verdict.

In Marshall, supra, the Court stated that it was not aware

31

of authority supporting "the proposition that the jury should be shielded from knowledge that search warrants have been issued in a criminal matter because the prior judicial determination of probable cause may influence the jury to assume guilt." Ibid. Significantly, however, Marshall did not suggest that it would be permissible for the prosecution to attempt to impute guilt to the defendant by repeatedly mentioning a search warrant. Surely, the prosecutor should not in any way imply that because a Superior Court judge issued a warrant based on evidence supplied by law enforcement authorities, the same evidence presented at trial has received a judicial endorsement.

This is the point made clear in State v. Alvarez, 318 N.J. Super. 137 (App. Div. 1999). In that case, the Appellate Division overturned the defendant's firearms convictions because of the prejudicial impact of "three references to an arrest warrant for defendant [and] six references to a search warrant (described as being issued by a judge)," all coming "directly out of the mouth of the prosecutor." Id. at 147. Because the credibility of the officers was not at issue in that case, the panel saw "no reason why either of the[] warrants needed to be injected into th[e] case." Id. at 148. Writing for the appellate panel, then-Judge (later Justice) Long noted that the prejudicial effect of the warrant references was magnified because "the prosecutor managed to insert into his questions the

32

fact that a judge issued the search warrant, thus suggesting that a judicial officer with knowledge of the law and the facts believed that evidence of criminality would be found in defendant's room."  Ibid.  The panel analogized Alvarez to State v. Milton, 255 N.J. Super. 514, 519 (App. Div. 1992), a case where the Appellate Division "reversed a conviction due to an improper reference to a search warrant for defendant's person."  Alvarez, supra, 318 N.J. at 147.  The Alvarez panel noted that in Milton, "[t]he natural inference from the mention of the warrant itself, confirmed by the cautionary instruction of the trial judge, was that sufficient independent proof had been presented to a neutral judge to believe that defendant would be found in possession of drugs."  Ibid. (quoting Milton, supra, 255 N.J. Super. at 520).  Accordingly, the Alvarez panel found that the numerous references to the warrants constituted plain error, warranting reversal.  Id. at 148.  We agree substantially with the reasoning of Judge Long in Alvarez.[1]  It would be wrong for the jury to infer guilt from a judge's issuance of a warrant.

---

[1] In State v. McDonough, 337 N.J. Super. 27, 34-35 (App. Div.), certif. denied, 169 N.J. 605 (2001), an appellate panel questioned whether Milton and Alvarez could be reconciled with Marshall.  Nevertheless, the panel recognized that a defendant is prejudiced when references to a warrant have a capacity to mislead the jury into believing the State has evidence of defendant's guilt beyond what was presented at trial.  Id. at 35.

A search warrant can be referenced to show that the police had lawful authority in carrying out a search to dispel any preconceived notion that the police acted arbitrarily.  A prosecutor, however, may not repeatedly mention that a search warrant was issued by a judge if doing so creates the likelihood that a jury may draw an impermissible inference of guilt.

B.

Here, the prosecutor mentioned the existence of a search warrant no less than fifteen times in the opening statement, summation, and during questioning of witnesses.  Some of those references specifically informed the jury that a Superior Court judge issued the warrant.  A few examples will suffice:

> A search warrant was then obtained, authorized by a Superior Court Judge and a search of the place that he was selling drugs from was conducted.
> [Prosecutor's Opening Statement.]

> As I mentioned to you, that information then was entered into an affidavit for a search warrant.  A search warrant brought to a judge. Before you can go into somebody's home under those circumstances, you need the authority of a Superior Court judge, and he received it.
> [Prosecutor's Opening Statement.]

> [Prosecutor]:  [W]hy were you surveilling [the home] if you already had a search warrant authorizing you to go in?
> [Questioning of Officer Carroll.]

> [Prosecutor]:  [Y]ou applied for a search warrant of 369 Dewolf Place?
> [Witness]:  A search warrant application was made.  Yes.

34

> [Prosecutor]: All right. And that
> application came before a Superior Court Judge
> in this building. Is that right?
> [Witness]: That is correct, [s]ir.
> [Prosecutor]: Was it granted?
> [Witness]: Yes it was, [s]ir.
> [<u>Questioning of Detective Smith</u>.]
>
> But now when they execute that Court
> authorized search warrant, they're finding the
> same kind of drugs that have been distributed
> on two prior occasions.
> [<u>Prosecutor's Summation</u>.]

The repeated references to the search warrant -- one issued by a Superior Court judge -- went well beyond what was necessary to inform the jury that the officers were acting with lawful authority. The constant drumbeat that a judicial officer issued a warrant to search defendant's home had little probative value, but did have the capacity to lead the jury to draw an impermissible inference that the court issuing the warrant found the State's evidence credible. <u>See</u> <u>N.J.R.E.</u> 403 ("[R]elevant evidence may be excluded if its probative value is substantially outweighed by the risk of . . . undue prejudice."). Defendant, however, did not raise an objection at trial to the references that he now claims denied him a fair trial. Because of our earlier finding that the admission of the erroneous expert testimony requires reversal and a new trial, we do not have to reach the issue of whether the search-warrant references constituted plain error.

VII.

35

For the reasons expressed, we reverse the judgment of the Appellate Division affirming defendant's convictions.  We remand to the trial court for further proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, and SOLOMON, and JUDGE CUFF (temporarily assigned) join in JUSTICE ALBIN'S opinion.  JUSTICE FERNANDEZ-VINA did not participate.

The full hypothetical question asked during the trial is reproduced below:

> [Prosecutor]: Now, let's assume that there's an individual residing in a home. And on the middle of the month someone approaches that home and engages in what appears to be a hand-to-hand drug transaction. That person -- that drug transaction occurs just outside the home as opposed to inside. And the person who approached the house, leaves the house and it is stopped within seconds in a short distance from that house, having met somebody there.
>
> After that hand-to-hand drug transaction and that stop, that person is found to be in possession of crack cocaine, in a quantity of -- assuming for this hypothetical .20 grams.
>
> Further assume, if you would, stopped by police. Further assume, if you would that approximately two weeks after that first drug buy. A second individual, a different individual approaches that same house, and the same individual in that house. A similar transaction occurs, hand-to-hand drug transaction. Are you familiar with that --
>
> [Detective Rothenberger]: Yes, sir.
>
> [Prosecutor]: Hand --
>
> [Detective Rothenberger]: Yes, sir.
>
> [Prosecutor]: Okay. A similar transaction occurs. That second buyer stopped a short distance away from the home again by law enforcement, who on both occasion [sic] are surveilling the residence. That second individual is found to be in possession of heroin. Of the amount of heroin is .02 grams.
>
> Assume further in these set of hypothetical facts that roughly a week and a

half later or so, the search warrant authorized by the Court is acted upon the same residence where law enforcement has been surveilling and those two purchases were made by those two different people.

Assume further that when the search warrant is acted upon the individual observed selling is outside the house. That there are three additional occupants within the house. They are an elderly woman, they are a woman in her later twenties and her young son about eight years old. When they enter the home located within the home, assume further, is first of all at a china hutch near that entrance is in a teacup, a small object, ten glassine envelopes suspected to be heroin, and established to be heroin.

Further assume that located in a bedroom upstairs there is found in a dresser a rock of crack cocaine, estimated weight slightly over 3 grams. Assume further that in that same room in a closet within a box, and again within another container within that box is a bag of white powder cocaine. Assume that the weight of that white powder is over half an ounce, 15, slightly over 15 grams. Please assume further that in that same box with that powder cocaine are 100 little baggies, purple in color. Assume further that next to those items in that same container is a digital scale about the size of your hand.

Lastly assume, well not lastly, but also assume that in that same room is a box of plastic sandwich bags, and assume, please if you would, that the two drug purchasers surveilling on those two previous occasions have also stated that they in fact made those drug purchases from the individual at that house.

Given those hypothetical facts, do you have an opinion as to whether or not the narcotics found in the home of the -- the hypothetical home; do you have an opinion as

to whether those narcotics were possessed for personal use or possessed with the idea to sell, and please give an opinion as to each narcotic.

[Detective Rothenberger]:  Well I do have an opinion . . . it's possession with intent to distribute, and I'll explain why, sir.

SUPREME COURT OF NEW JERSEY

NO. ___A-8___          SEPTEMBER TERM 2014

ON CERTIFICATION TO ____Appellate Division, Superior Court____


STATE OF NEW JERSEY,

     Plaintiff-Respondent,

          v.

SCOTT M. CAIN,

     Defendant-Appellant.



DECIDED          March 15, 2016
____Chief Justice Rabner____          PRESIDING
OPINION BY     Justice Albin
CONCURRING/DISSENTING OPINIONS BY  _____
DISSENTING OPINION BY  _____

| CHECKLIST | REVERSE/ VACATE/ REMAND | |
| --- | --- | --- |
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ---------------- | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |