NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0937-21

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

TERRELL TUCKER,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

August 3, 2022

APPELLATE DIVISION

Argued May 18, 2022 – Decided August 3, 2022

Before Judges Gilson, Gooden Brown and Gummer.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 21-01-0129.

Simon Wiener, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Simon Wiener, of counsel and on the briefs).

Patrick R. McAvaddy, Assistant Prosecutor, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Patrick R. McAvaddy, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.A.D.

By leave granted, defendant Terrell Tucker appeals from an October 1, 2021 Law Division order amplifying a June 16, 2021 order which denied defendant's motion to dismiss an indictment charging defendant with numerous drug-related offenses, including possession of controlled dangerous substances (CDS) with intent to distribute. At the grand jury proceeding, Officer Patrick Egan described the circumstances surrounding defendant's arrest, including exchanges the police observed between defendant and other individuals, as well as the cache of illicit narcotics recovered by law enforcement at the scene. Near the end of Egan's testimony, the prosecutor asked Egan if he believed, based on his training and experience, that defendant had possessed the narcotics with the intent to distribute them. Egan replied in the affirmative and described the considerations that informed his opinion.

In a subsequent motion to dismiss the indictment, citing State v. Cain, 224 N.J. 410, 429 (2016), in which our Supreme Court held that expert witnesses in drug cases "may not opine on the defendant's state of mind," defendant argued that Egan's testimony improperly interfered with the grand jury's decision-making function. The motion judge denied the motion, concluding the State had presented sufficient evidence to support a prima facie case, and Egan's testimony did not subvert the grand jury process. Defendant then moved for amplification of the judge's findings, seeking clarification on

whether the judge found that the holding in <u>Cain</u> applied to grand jury proceedings. The judge ultimately determined it was unnecessary to reach the question of whether <u>Cain</u> applied because the State had presented sufficient evidence to establish a prima facie case.

On appeal, defendant raises the following arguments for our consideration:

> THE TRIAL COURT ERRED BY DENYING [DEFENDANT'S] MOTION TO DISMISS THE INDICTMENT BECAUSE OFFICER EGAN'S IMPROPER OPINION TESTIMONY ABOUT [DEFENDANT'S] STATE OF MIND CLEARLY INFRINGED UPON THE GRAND JURY'S FUNCTION. <u>N.J. CONST.</u> ART. 1, ¶ 8; <u>U.S. CONST.</u> AMEND. V.
>
> > A. This Court Should Review De Novo, Asking Whether The State's Solicitation Of State-Of-Mind Testimony Improperly Influenced The Grand Jury's Decision-Making.
> >
> > B. The Reasoning In <u>State v. Cain</u>, Which Prohibits Expert State-Of-Mind Testimony In Drug Cases, Applies To Petit And Grand Juries Alike And Protects The Grand Jury's Proper Functioning.
> >
> > C. Specifically, The State's Choice To Solicit State-Of-Mind Testimony Harmed The Ability Of The Grand Jury In [Defendant's] Case To Make An Informed Decision About Whether To Indict.

3

We hold that the rationale in Cain prohibiting expert witnesses in drug cases from opining on a defendant's state of mind applies equally to grand jury proceedings.  Because Egan's expert testimony regarding defendant's state of mind impermissibly encroached upon the grand jury's decision-making function, we reverse in part.

I.

We glean these facts from the grand jury proceeding during which Egan, a ten-year veteran of the Jersey City Police Department, was the sole testifying witness.  After describing his extensive training and experience conducting narcotics investigations and his involvement in "hundreds" of narcotics related arrests, Egan testified that at approximately 5:13 p.m. on October 28, 2020, Jersey City police officers observed defendant engage in "suspected narcotics activity" near 96 Grant Avenue.[1]  Specifically, officers saw defendant converse with and then direct individuals to head west on Grant Avenue, at which point defendant would enter an alleyway between 96 and 98 Grant Avenue and emerge soon after to rejoin the individuals and exchange an item for currency.

Ultimately, the officers stopped defendant near the alleyway and detected "a strong odor of marijuana emanating from his person."  The officers

---

[1] The officers also observed co-defendant Shawn Jackson engage in suspected drug trafficking.  However, the charges against Jackson were later dismissed and are not a part of this appeal.

then searched defendant and recovered twenty-three baggies of marijuana and sixty-five dollars of suspected drug sale proceeds. A search of the alleyway, where defendant was the only person seen entering and exiting during the relevant time frame, revealed a drug stash consisting of "19 Ziploc baggies of [suspected] crack cocaine," "[100] folds of [suspected] heroin stamped 'Dope Dick,'" and "37 folds of [suspected] heroin stamped 'Bang.'" Subsequent laboratory testing confirmed that the items recovered from the scene contained marijuana, cocaine, a mix of heroin and fentanyl, and pure fentanyl. Egan testified that the alleged drug sales occurred within 1,000 feet of a public school and 500 feet of a public library.

Near the end of Egan's testimony, the prosecuting attorney asked Egan if he believed defendant had possessed the drugs with the intent to distribute them. The exchange occurred as follows:

> [PROSECUTOR]: . . . Now, finally, Officer, is it your opinion, based on your training and experience and the facts of this case, that defendant[] . . . possessed . . . the suspected cocaine, heroin and marijuana with the intent to distribute it?
>
> [EGAN]: Yes.
>
> [PROSECUTOR]: Okay. And what specifically about this led you to believe that . . . defendant[] intended to sell [narcotics]?
>
> . . . .

A-0937-21

> [EGAN]: Our observations, the packaging of all the narcotics and just the entire incident; how they would be approached, how they would engage somebody in conversation and then there would be an exchange of currency, and then the recovery of the drugs themselves.

Following Egan's testimony, the grand jurors asked no questions when given an opportunity to do so.

The grand jury returned an indictment charging defendant with third-degree possession of CDS (cocaine and heroin), N.J.S.A. 2C:35-10(a)(1) (counts one and two); third-degree possession of CDS (cocaine and heroin) with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (counts three and four); third-degree possession of CDS (cocaine, heroin, and marijuana) with intent to distribute within 1000 feet of school property, N.J.S.A. 2C:35-7(a) (counts five, six, and eight); fourth-degree possession of marijuana with intent to distribute, N.J.S.A. 2C:35-5(a)(1), (b)(12) (count seven); second-degree possession of CDS (cocaine and heroin) with intent to distribute within 500 feet of a public building, N.J.S.A. 2C:35-7.1(a) (counts nine and ten); and third-degree possession of marijuana with intent to distribute within 500 feet of a public building, N.J.S.A. 2C:35-7.1(a) (count eleven).

Defendant moved to dismiss the indictment in its entirety, arguing, among other things, that the State had impermissibly interfered with the grand jury's decision-making role by eliciting testimony from Egan that he believed

6

defendant possessed the drugs with the intent to distribute them.  Defendant asserted that the State's failure to qualify Egan as an expert witness made the impermissible testimony even more egregious.  Following oral argument, the judge acknowledged in a written opinion issued on June 16, 2021,[2] that Egan's testimony initially "gave [him] pause" in light of the Supreme Court's decision in Cain.

However, after reviewing the governing legal principles applicable to dismissal motions, the judge denied defendant's motion to dismiss counts one through six, and counts nine and ten, finding that:

> the opinion testimony of the officer in this case, viewed in context with the fact testimony provided, did not impermissibly 'taint' the proceeding nor strip the [g]rand [j]urors of their function.  There was sufficient evidence presented to the [g]rand [j]urors for them to independently find probable cause.  All of the facts elicited through Officer Egan's testimony had previously been presented to the [g]rand [j]ury.  Therefore, it is not unreasonable, based on the fact testimony presented, that a grand juror could conclude that the defendant[] distributed or intended to distribute a controlled dangerous substance.  Also, the [d]efense has not presented any evidence that the jurors were unaware or did not understand the elements of the offenses charged.  Further, the [d]efense has not presented sufficient evidence that the [g]rand [j]ury came to its finding of probable

---

[2]  On the same date, the judge issued an oral decision on the record that mirrored the written opinion.

cause based upon the testimony of the officer regarding his opinion.

Moreover, this court finds that the presentation of opinion testimony of Officer Egan by the State was not an intentional subversion of the grand jury process, based upon the testimony and evidence elicited throughout the proceeding. Therefore, any alleged error in allowing the [g]rand [j]ury to hear the opinion testimony in this case was not of such a nature as to have been clearly capable of producing an unjust result. Consequently, viewing the testimony as a whole, the evidence presented and the rational inferences which can be reasonably drawn from that evidence in a light most favorable to the State, a grand jury could reasonably find probable cause supporting the distribution charges alleged.

[(citations omitted).]

On the State's motion, the judge dismissed the marijuana-related charges contained in counts seven, eight, and eleven of the indictment, explaining:

On February 22, 2021, Governor Phil Murphy signed the New Jersey Cannabis Regulatory, Enforcement Assistance and Marketplace Modernization Act and the marijuana decriminalization laws, which codified marijuana legalization and entirely eliminated several crimes criminalizing the possession and sale of small amounts of marijuana. On the same date, the Attorney General directed all prosecutors operating under the authority of the laws of the State of New Jersey to dismiss pending marijuana-related charges in accordance with the promulgated directives. See . . . Attorney General Law Enforcement Directive No. 2021-1.

. . . [B]ecause . . . the Hudson County Prosecutor's Office has so moved, [d]efendant['s] . . .

A-0937-21

[m]otion to [d]ismiss [c]ounts [seven, eight and eleven] is [granted].

Subsequently, citing Rules 3:29 and 1:7-4, defendant filed a motion for amplification of the judge's findings, presenting four specific questions to the judge. Pertinent to this appeal, defendant asked:

> 1. Does th[e c]ourt find that the holdings of [Cain] apply before the grand jury?
>
> 2. What is the [c]ourt's ruling on the fact that Officer Egan was never qualified as an expert before offering his opinion before the grand jury? What is th[e c]ourt's ruling on whether opinion testimony may be offered by a lay witness, not just an expert, before the grand jury?

On September 3, 2021, the judge heard oral argument during which the judge stated defendant's motion "might be more rightly called a reconsideration motion" because it presented issues not "fully raised or argued" at the prior hearing. In a written opinion issued on October 12, 2021, the judge responded to defendant's questions and again denied the motion to dismiss.[3]

In response to question one, because the judge had found the State had presented sufficient evidence to the grand jury to establish a prima facie case

---

[3] On October 1, 2021, the judge issued an oral decision on the record that essentially mirrored the written opinion. The judge subsequently issued a superseding opinion correcting clerical errors in the original opinion.

and preclude dismissal of the indictment, the judge determined it was not necessary to reach the question of whether <u>Cain</u> applied to a grand jury proceeding. Nonetheless, the judge noted "that <u>Cain</u> was sufficiently distinguishable from the present case so as to render the Court's holding in <u>Cain</u> inapplicable to the facts and circumstances at hand." In that regard, the judge explained that unlike <u>Cain</u>, where "the witness testified at trial before a petit jury, under the higher standard of reasonable doubt," "the witness in the present case testified during a grand jury proceeding, which was governed by the standard of probable cause." Further, the judge pointed out that while the <u>Cain</u> Court "relied heavily on the [r]ule[s] of [e]vidence," the "[r]ules of [e]vidence do not strictly apply" to grand jury proceedings. <u>See</u> N.J.R.E. 101(a)(3)(D) (relaxing the rules of evidence in grand jury proceedings "to the extent permitted by law").

Addressing question two, after discussing the evidence rules regarding the admissibility of expert testimony, the judge noted that Egan was neither qualified nor presented as an expert witness to the grand jury. Nonetheless, relying on <u>State v. McClean</u>, 205 N.J. 438, 460 (2011), the judge concluded Egan had testified as an expert witness because he had based his testimony on "his training and experience" as a police officer. Despite that finding, the judge reiterated that "Egan's testimony did not impermissibly taint the [g]rand

10

[j]ury proceeding" because the State had presented sufficient evidence from which the grand jurors could "independent[ly]" conclude there was probable cause to indict defendant. The judge also determined that because Egan had testified as an expert witness, the question of "whether opinion testimony regarding defendant's state of mind may be offered by a lay witness" was "moot." After "reconsider[ing] the underlying motion based on the questions presented," the judge reiterated that "dismissal of the indictment . . . would be inappropriate under the law."[4]

## II.

The question presented in this ensuing appeal is whether the holding in Cain applies to grand jury proceedings and, if so, whether the elicitation of state-of-mind testimony from an expert witness so tainted the proceedings that the judge erred in denying defendant's motion to dismiss the indictment. "A trial court's denial of a motion to dismiss an indictment is reviewed for abuse

---

[4] The other two questions defendant asked were: (3) "Is the [c]ourt relying on specific case law in finding that Officer Egan's testimony did not impermissibly taint the grand jury proceeding nor strip them of their function?"; and (4) "What is the [c]ourt's position as to whether Officer Egan's testimony required a curative instruction?" The judge responded that he had "relied on abundant case law" governing "the standard for reviewing a motion to dismiss the indictment" as well as the "legal standards [applicable] to grand jury proceedings," and "[a] determination of whether Officer Egan's testimony required a curative instruction was unnecessary to reach a legal conclusion" on defendant's motion.

A-0937-21

of discretion." State v. Twiggs, 233 N.J. 513, 544 (2018). Under that standard, "[w]e will not disturb the denial of such a motion 'unless [the judge's discretionary authority] has been clearly abused.'" State v. Saavedra, 433 N.J. Super. 501, 514 (App. Div. 2013) (second alteration in original) (quoting State v. Warmbrun, 277 N.J. Super. 51, 60 (App. Div. 1994)). "However, we review the trial court's legal conclusions de novo." State v. Nicolas, 461 N.J. Super. 207, 211 (App. Div. 2019). We view the issue presented here as a legal one and therefore apply a de novo standard of review.

Article I, Paragraph 8 of the New Jersey Constitution provides in pertinent part that "[n]o person shall be held to answer for a criminal offense, unless on the presentment or indictment of a grand jury." "Thus, the grand jury 'occupie[s] a high place as an instrument of justice in our system of criminal law.'" State v. Bell, 241 N.J. 552, 559 (2020) (alteration in original) (quoting State v. Murphy, 110 N.J. 20, 36 (1988)). As our Supreme Court has explained, the grand jury "operates as both a sword and shield," State v. Shaw, 241 N.J. 233, 235 (2020), by "bring[ing] to trial those who are probably guilty" and "clear[ing] the innocent of baseless charges," In re Grand Jury Appearance Request by Loigman, 183 N.J. 133, 138 (2005). To that end, grand juries "serve a dual purpose: to determine if probable cause exists and to 'stand[] between the defendant and the power of the State' and protect

A-0937-21

'defendant[s] from unfounded prosecutions.'" Shaw, 241 N.J. at 238 (alterations in original) (quoting State v. Fortin, 178 N.J. 540, 638 (2004)). Despite the old adage that a prosecutor could convince a grand jury to "indict a ham sandwich," State v. Harrison, 854 S.E.2d 468, 481 (S.C. 2021), "the presence of the right to indictment in [our] State Constitution indicates that the grand jury was intended to be more than a rubber stamp of the prosecutor's office," State v. Hogan, 144 N.J. 216, 236 (1996).

"To perform [their] function, grand juries are invested with 'broad and unfettered investigative powers' that are largely 'unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.'" Bell, 241 N.J. at 559-60 (quoting In re Application for Disclosure of Grand Jury Testimony, 124 N.J. 443, 449 (1991)). It is axiomatic that "grand jury presentations are not full-fledged trials at which the State must prove a defendant's guilt beyond a reasonable doubt." Shaw, 241 N.J. at 238. In fact, "[p]rosecutors typically make abbreviated presentations to the grand jury that are designed to satisfy the lower standard of probable cause" and generally "present hearsay testimony before the grand jury." Ibid.; see also N.J.R.E. 101(a)(3)(D) (relaxing the evidentiary rules in grand jury proceedings "to the extent permitted by law," "to admit relevant and trustworthy evidence in the interest of justice"); Biunno, Weissbard & Zegas, Current N.J. Rules of

13

Evidence, cmt. 2 on N.J.R.E. 101(a) (2022) (acknowledging "no dispute that a grand jury may return an indictment on the basis of hearsay or other evidence which may not be legally competent or admissible at trial").

Still, "[t]he grand jury is a judicial, investigative body, serving a judicial function; it is an arm of the court, not a law enforcement agency or an alter ego of the prosecutor's office." Loigman, 183 N.J. at 141. "Although the grand jury is an arm of the court, it is an independent body, so courts are reluctant to intercede directly in the indictment process" and have "acted only when necessary to ensure the fairness and integrity of grand jury proceedings" and to ensure that a defendant's "right to a fundamentally fair grand jury presentation" has not been violated. Shaw, 241 N.J. at 229-30. In recognition of its independence, "[o]nce the grand jury has acted, an 'indictment should be disturbed only on the "clearest and plainest ground"' and only when the indictment is manifestly deficient or palpably defective." Hogan, 144 N.J. at 228-29 (citations omitted) (quoting State v. Perry, 124 N.J. 128, 168 (1991)). However, "[s]crutiny of grand jury proceedings is particularly probing where a motion to dismiss an indictment claims that a 'deficiency in the proceedings affect[ed] the grand jurors' ability to make an informed decision whether to indict.'" Bell, 241 N.J. at 560 (second alteration in original) (quoting Hogan, 144 N.J. at 229).

14

Our Supreme Court has also expressed a willingness to dismiss an indictment if prosecutorial misconduct infringes on the grand jury's decision-making function. Hogan, 144 N.J. at 229. "Under that standard, dismissal of an indictment is warranted only if the prosecutor's conduct 'impinge[s] on a grand jury's independence and improperly influence[s] its determination.'" Bell, 241 N.J. at 561 (alterations in original) (quoting State v. Francis, 191 N.J. 571, 587 (2007)). For example, "an indictment will fail where a prosecutor's instructions to the grand jury were misleading or an incorrect statement of law." State v. Triestman, 416 N.J. Super. 195, 205 (App. Div. 2010). Similarly, in State v. Hart, 139 N.J. Super. 565, 569 (App. Div. 1976), we dismissed an indictment because the prosecutor told the grand jury its initial vote not to indict was wrong.

Further, "the grand jury cannot be denied access to evidence that is credible, material, and so clearly exculpatory as to induce a rational grand juror to conclude that the State has not made out a prima facie case against the accused." Hogan, 144 N.J. at 236. "If evidence of that character is withheld from the grand jury, the prosecutor, in essence, presents a distorted version of the facts and interferes with the grand jury's decision-making function." Ibid. (citation omitted). In that regard, in Hogan, the Court held prosecutors have "a

15

limited duty" to present to the grand jury "evidence that both directly negates the guilt of the accused and is clearly exculpatory." Id. at 237.

Otherwise, "the prosecutor's sole evidential obligation is to present a prima facie case that the accused has committed a crime." Id. at 236. Consequently, "[a] trial court . . . should not disturb an indictment if there is some evidence establishing each element of the crime to make out a prima facie case," and the trial court "should evaluate whether, viewing the evidence and the rational inferences drawn from that evidence in the light most favorable to the State, a grand jury could reasonably believe that a crime occurred and that the defendant committed it." State v. Morrison, 188 N.J. 2, 12-13 (2006). "In that task, we acknowledge that . . . grand jury proceedings are entitled to a presumption of validity . . . ." Francis, 191 N.J. at 587.

In Cain, the Court vacated a defendant's drug convictions and remanded for a new trial because the prosecutor had "elicited [an] expert's opinion that [the] defendant intended to distribute drugs." 224 N.J. at 414. First, the Court reasoned that "[w]hether [the] defendant had the requisite state of mind to commit the offense – the intent to distribute – was an ultimate issue of fact to be decided by the jury." Id. at 420. Next, turning to our rules of evidence, the Court observed that "expert testimony on the ultimate issue of whether a defendant intended to distribute drugs is permissible only if it 'will assist the

16

trier of fact to understand the evidence or to determine a fact in issue.'" Id. at 421 (quoting N.J.R.E. 702).

Ultimately, the Court concluded "an expert is no better qualified than a juror to determine the defendant's state of mind after the expert has given testimony on the peculiar characteristics of drug distribution that are beyond the juror's common understanding." Id. at 427. Accordingly, the Court held that "in drug cases, an expert witness may not opine on the defendant's state of mind" and "conclude[d] that the use of the expert testimony in th[e] case had the clear capacity to cause an unjust result." Id. at 414, 429.

Underlying the Cain Court's rationale was concern about the effect of such expert testimony on a jury's deliberative process. In finding that the expert's testimony "exceeded appropriate bounds and encroached on the jury's exclusive domain as finder of fact," id. at 414, the Court reasoned:

> Expert testimony is not necessary to explain to jurors the obvious. It is not a substitute for jurors performing their traditional function of sorting through all of the evidence and using their common sense to make simple logical deductions.
>
> . . . .
>
> Additionally, expert testimony coming from a law enforcement officer claiming to have superior knowledge and experience likely will have a profound influence on the deliberations of the jury.
>
> . . . .

17

. . . In drug cases, such ultimate-issue testimony may be viewed as an expert's quasi-pronouncement of guilt that intrudes on the exclusive domain of the jury as factfinder and may result in impermissible bolstering of fact witnesses. The prejudice and potential confusion caused by such testimony substantially outweighs any probative value it may possess.

[Id. at 427-28.]

The holding in Cain arose in the context of a jury trial, and the opinion is silent on whether it applies to grand jury proceedings. On the one hand, grand jurors and petit jurors differ in key respects and serve separate and distinct roles. "The grand jury's role is not to weigh evidence presented by each party, but rather to investigate potential defendants and decide whether a criminal proceeding should be commenced. Credibility determinations and resolution of factual disputes are reserved almost exclusively for the petit jury." Hogan, 144 N.J. at 235 (citations omitted). Additionally, "the grand jury's core purpose is to 'determine whether the State has established a prima facie case that a crime has been committed and that the accused has committed it.'" Francis, 191 N.J. at 586 (quoting Hogan, 144 N.J. at 227). Thus, unlike a petit jury, "the grand jury need not be exposed to all evidence that could be used at trial to create a reasonable doubt regarding the defendant's guilt." Hogan, 144 N.J. at 231; see also State v. Vega-Larregui, 246 N.J. 94, 120 (2021) ("Unlike

18

at a trial, a defendant has no right to present evidence or confront the witnesses against him at a grand jury proceeding.").

However, grand and petit juries are similarly tasked with considering evidence and making independent determinations whether to indict or convict, respectively. That said, the Cain Court's analysis regarding the "profound influence" of expert testimony from law enforcement officers "on the deliberations of the jury" is no less applicable to grand juries. 224 N.J. at 427. Such expert testimony regarding an accused's state of mind will likely infringe on the grand jury's independent decision-making function by improperly influencing its ultimate determination. Moreover, such testimony would adversely affect the fairness and integrity of a grand jury proceeding, much like it would a jury trial.

Here, the judge correctly concluded that Egan offered expert testimony that defendant intended to distribute CDS. Our Supreme Court has held that when a police officer testifies based on "'his training and experience' . . . 'about his belief as to what had happened,'" that testimony constitutes expert opinion, regardless of whether the officer had been qualified. State v. Derry, 250 N.J. 611, 632 (2022) (quoting McClean, 205 N.J. at 462); see also McClean, 205 N.J. at 463 ("[T]he testimony of the police detective, because it was elicited by

a question that referred to the officer's training, education and experience, in actuality called for an impermissible expert opinion.").

Nonetheless, the judge did not dismiss the indictment because he found the prosecutor had presented sufficient evidence for the grand jury to have independently found probable cause. Likewise, the judge concluded Egan's testimony did not infringe on the grand jury's decision-making function because the prosecutor had presented facts from which the grand jurors could have independently determined defendant's state of mind. However, the question of whether the prosecutor presented a prima facie case is separate and distinct from whether the grand jury presentation was fundamentally fair and whether the prosecutor infringed on the grand jury's decision-making function in the presentation.

Given the holding and reasoning in Cain, defendant's argument that Egan's expert testimony was improper is persuasive. The potential for expert testimony to exert improper influence is even greater in grand jury proceedings than in trials because the presentation is one-sided. See Francis, 191 N.J. at 586 (noting that "[g]rand jury proceedings are largely controlled by prosecutors"). Moreover, although the grand jury could have independently inferred defendant possessed CDS with intent to distribute them, Egan's expert testimony that he believed defendant possessed the requisite intent raises

20

legitimate concerns about whether the grand jury felt free to decide otherwise. See State v. Torres, 183 N.J. 554, 580 (2005) ("[W]hen the expert witness is an investigating officer, the expert opinion may present significant danger of undue prejudice because the qualification of the officer as an expert may lend credibility to the officer's fact testimony regarding the investigation.").

We acknowledge, as the judge did, that the grand jury is not bound by the rules of evidence. However, we have explained that the grand jury is "free from the constraints of the rules of evidence and procedure" because "[i]t also operates as an independent investigatory body." In re Grand Jury Subpoena Issued to Galasso, 389 N.J. Super. 281, 292 (App. Div. 2006). "'The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials.'" State v. Doliner, 96 N.J. 236, 249 (1984) (quoting United States v. Sells Eng'g, Inc., 463 U.S. 418, 423 (1983)). Applying Cain's holding to grand jury proceedings "[g]oing forward" would in no way compromise the grand jury's ability to operate as an independent investigatory body. 224 N.J. at 429.

Moreover, "principles of fairness are particularly important in a grand jury setting in which the prosecutor questions witnesses, introduces evidence, and explains the law to the jurors without a judge or defense attorney in

21

attendance." Loigman, 183 N.J. at 144-45. "While performing those functions, the prosecutor cannot impinge on a grand jury's independence and improperly influence its determination." Francis, 191 N.J. at 587. Thus, we find no principled reason to conclude that the holding in Cain, which prohibits eliciting expert testimony regarding a defendant's intent to distribute in a drug-trafficking prosecution, should not apply to grand jury proceedings.

Accordingly, we hold that the prosecutor's conduct in eliciting the testimony improperly encroached on the independence of the grand jury and improperly influenced its determination. As a result, we reverse the judge's decision denying defendant's motion to dismiss counts three, four, five, six, nine and ten of the indictment, all of which required an intent to distribute as an element of the charged offense. However, we affirm the denial of defendant's motion to dismiss counts one and two of the indictment for the reasons stated by the judge because those counts do not include an intent to distribute as an element of the offenses. We hasten to add that nothing in this opinion precludes the State from re-presenting this matter to another grand jury. See State v. Jeannotte-Rodriguez, 469 N.J. Super. 69, 106 (App. Div. 2021) (affirming the dismissal of an indictment without prejudice).

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0937-21